UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
-------------------------------------------------------------------------X
IN THE MATTER OF SOGGY BOTTOM     Case No.: _____
CORPORATION AS OWNER AND COASTAL DESIGN
& CONSTRUCTION, INC. AS OPERATOR OF BARGE
YD 71 PETITIONING FOR EXONERATION FROM OR
LIMITATION OF LIABILITY IN ALLISION WITH
BUCKROE BEACH FISHING PIER, HAMPTON, VA
OCCURRING NOVEMBER 17, 2019
-------------------------------------------------------------------------X

## COMPLAINT FOR EXONERATION FROM OR LIMITATION OF LIABILITY

NOW INTO COURT, through the undersigned counsel, comes SOGGY BOTTOM CORPORATION and COASTAL DESIGN & CONSTRUCTION, INC. (collectively referred to as "Petitioner") as owner and operator respectively of the **Barge YD 71**, and petitions for exoneration from or limitation of liability, civil and maritime, pursuant to Federal Rule of Civil Procedure 9(h), Rule F of the Supplementary Rules for Certain Admiralty and Maritime Claims, the Local Rules of Practice for the United States District Court for the Northern District of New York, and 46 U.S.C. § 30501, *et seq.*, and alleges as follows:

1. At all material times, Petitioner was and is a duly organized and existing under the laws for the State of Virginia corporation, with its principal place of business in Gloucester, Virginia. At all material times, Petitioner was and is the owner and operator of the **Barge YD 71**.

2. **Barge YD 71** is a steel-hulled rig barge, approximately 110 feet in length, and weighs approximately 32 gross tons. At all material times, the **Barge YD 71** was fully and properly equipped and supplied, and in all respects seaworthy and fit for the services

for which it was engaged. At all material times, the *Barge YD 71* was properly moored in the Chesapeake Bay at Salt Ponds Inlet.

3. Due to an unforeseen extreme weather incident, on November 17, 2019, the *Barge YD 71* was caused to be break free from its moorings and caused to drift approximately one (1) mile before striking Buckroe Beach Fishing Pier located in Hampton, Virginia.

## JURISDICTION AND VENUE

4. The events that give rise to this action occurred in the Chesapeake Bay at Salt Ponds Inlet and in the vicinity of Hampton, Virginia, specifically the Buckroe Beach Fishing Pier. The Chesapeake Bay is a navigable body of water of the United States of America. Therefore, this Court has subject matter jurisdiction over this matter. 28 U.S.C. §1333.

5. *Barge YD 71* is currently located at Cape Charles, Virginia. The vessel has not been attached or arrested and a suit has not been commenced against its owner. Therefore, venue is properly in the Eastern District of Virginia.

## FACTS

**A. The Mooring Configuration of the Barge YD 71**

6. On November 17, 2019 the *Barge YD 71* was moored in the Chesapeake Bay, approximately (2) two miles North of Buckroe Beach Fishing Pier located in Hampton, Virginia.

7. The vessel was moored using an extremely safe and commonplace mooring configuration that included attaching the anchor chain directly to the bow bit. This configuration was specifically arranged because of anticipated high winds, when crew

members unhooked the wire choker from the bow bit and the mooring buoy and placed the anchor chain directly around the bow bit using a "chain loop."

**B.     The Weather on the Day of the Incident**

8. Although local weather forecasted strong winds for the day of the incident, such weather reports did not anticipate nor warn of extremely heavy winds leading to large and elongated wave series, the effect of which was to create extreme and unexpected stress on *Barge YD 71* and, more specifically, extreme stress on the chain loop and the anchor chain in such a manner as to eliminate the catenary loop of the anchor chain and stretch it to a breaking point.

9. Besides strong winds, a coastal flood warning was in effect from 3:00 A.M., Saturday, November 17, 2019 to 3:00 a.m., Monday, November 19, 2019. The coastal flood warning was issued from Virginia Beach, Virginia to Williamsburg, Virginia, with expected flooding to occur along the Chesapeake Bay and tidal rivers. (*See* Daily Press, November 15, 2019, www.dailypress.com/weather/storms/vp-nw-weather-coastal-storm-flooding-20191115-fodiom76mvb4mp33yyglfv4a-story.html]) The *Barge YD 71* was moored at Salt Ponds Inlet approximately two (2) miles North of Buckroe Beach Fishing Pier, located in Hampton, Virginia. Hampton is located midway between Virginia Beach and Williamsburg. Thus, the *Barge YD 71* was moored in the coastal flood warning zone. Despite Petitioner's crew rigging the barge for strong winds <u>prior</u> to the storm, the weather as set forth below exceeded that which was forecast and an unexpected storm surge caused *Barge YD 71* to break free of its mooring through no fault of Petitioner and/or its crew members, employees, or agents,

C.  **November 17, 2019 Incident**

10. Prior to the day of the incident, employees/crew members of Petitioner removed the wire choker which led to the mooring buoy which was attached to 125 feet of chain leading directly to the anchor. As is standard and prudent practice when anticipating high winds, the employees/crew of Coastal lifted the anchor chain to the barge and wrapped a chain loop (loop of equivalent chain) directly onto the bow bit of *Barge YD 71*. This ensures that the barge is directly connected to the anchor by chain. Moreover, a proper catenary existed subsequent to the heavy wind, ensuring that the length of the chain rested on the bottom of the Bay, which provided the required weight to keep the barge in place at its mooring.

11. Sometime in the late hours of 11/16/2019 and/or the early hours of 11/17/2019, the weather in Chesapeake Bay deteriorated resulting in heavy winds and increased wave activity. Due to the increased strain caused by the heavy weather, the chain, either at the chain itself or at the chain loop wrapped around the bow bit, parted causing *Barge YD 71* to drift South approximately two (2) miles where it struck Buckroe Beach Fishing Pier in Hampton, Virginia, resulting in damage to approximately fifty (50) feet of the concrete pier.

12. At approximately 9:00 a.m. on 11/17/2019, James Gunn, owner and operator of *Barge YD 71*, was informed that *Barge YD 71* was adrift and had struck the Buckroe Beach Fishing Pier. Mr. Gunn immediately commenced, with the assistance of the Hampton Fire Department and Hampton Public Works, efforts to extract the barge from the damaged pier. On Monday, November 18, 2019, Mr. Gunn filed a Mooring

Plan and Salvage Plan with the U.S. Coast Guard, who approved the Plan and by 3:00 p.m., the barge was free.

### D. The Damage Sustained by the Buckroe Beach Fishing Pier and Barge YD 71 is Consistent with An Unforseen Act of Nature

13. The damages sustained to Buckroe Beach Fishing Pier and to the Petitioner's vessel *Barge YD 71* are consistent with an unexpected act of nature that resulted in unforeseen and excessive wave and wind forces to the barge and its associated chain and mooring protocol.

14. The broken anchor chain and/or chain loop is consistent with a sudden failure caused by the loss of the catenary of the chain due solely to the unexpected and unforeseen force applied to the chain and/or chain loop.

### E. The Claim of Damage to the Buckroe Beach Fishing Pier

15. On November 22, 2019, the City of Hampton, Virginia ("Hampton") demanded via Notice of Claim from its Risk Manager, Joe Sanders, that the Petitioner reimburse Hampton for the damage to the Buckroe Beach Fishing Pier a/k/a The James T. Wilson Fishing Pier, in an amount as yet unknown but potentially in excess of One Million Dollars ($1,000,000), an amount well in excess of the value of *Barge YD 71*.

### F. Petitioner is Entitled to Exoneration from fault or Limitation of Liability

16. The facts described above concerning the claimed incident, and all claimed resultant losses or damages, were not caused by or contributed to by any fault, neglect, or negligence of Petitioner, or any person for whose acts Petitioner is responsible. Petitioner was not negligent or at fault, and has no responsibility, and is not liable for the damages claimed by Hampton or any other claimant; the *Barge YD 71* was

seaworthy at all times, and said claimed damages were done, occasioned, or incurred by acts or events that occurred without the privity or knowledge, actual or imputed, of Petitioner, its managing agents, managing officers, or supervising employees.

17. Petitioner denies that it or any persons or property for whom or which it may be responsible are liable to any extent for Hampton's or any other claimant's damages. Petitioner claims exoneration and exemption from all liability for all losses, damages, and injuries occasioned or incurred, or alleged to have been occasioned or incurred by reason of the events described above, and from any and all claims by Hampton or any claimant that may hereafter be made.

18. In the alternative, and in the event Petitioner should be held responsible because of these actions, Petitioner claims the benefits of the Limitation of Liability Act provisions set forth in §30501 through §30512, inclusive, of Title 46 of the United States Code, and all laws supplementary thereto and amendatory thereof.

19. The attached affidavit of Kenner Hendrix, NAMS-CMS, describes the condition of the *Barge YD 71*. Petitioner offers and files herewith an *ad interim* security averring that *Barge YD 71* has a value of approximately $85,000.00. Petitioner is prepared to give security, bond, or stipulation for any amount in excess of the *ad interim* security as may be ascertained and determined to be necessary by order of this Court, the rules of this Court, and as provided by the laws of the United States.

20. Petitioner further specifically avers that the Complaint, and the claim for exoneration from or limitation of liability asserted herein, is filed not only on its behalf but also on behalf of its liability underwriters, who shall be entitled to exoneration from or

limitation of liability to the same extent as Petitioner, and whose liability in the premises, if any, shall accordingly not exceed Petitioner's liability, if any.

**WHEREFORE,** Petitioner prays:

(1) That the Court enter an Order approving the *ad interim* security for the value of ***Barge YD 71***;

(2) That the Court enter an Order directing the Clerk of Court to accept into the registry of the Court security as approved in the first instance, a letter of undertaking in acceptable form issued by Petitioner's insurer, representing the value of ***Barge YD 71***, and six percent (6%) interest;

(3) That the Court enter an Order directing the Clerk of Court to accept into the registry of the Court the sum of $1,000.00 in lieu of filing a cost bond;

(4) That the Court issue notice to all persons asserting claims by reason of any loss, injury, expense or damages, occasioned or incurred by reason of the aforementioned incident, admonishing them to file their claims with the Clerk of the Court and to serve the attorneys for Petitioner a copy thereof on or before a date to be named in the notice, or forever be barred and permanently enjoined from making and filing any such claims;

(5) That the Court issue an injunction restricting the commencement or prosecution of any and all claims, actions, suits, or legal proceedings of any kind whatsoever against ***Barge YD 71***, Petitioner, its property, its representatives, insurers, or its underwriters arising out of the aforementioned incident other than in the present action;

(6) That this Court adjudge that the Petitioner and ***Barge YD 71*** are not liable for any loss, injury, expense or damage or claim whatsoever in consequence of the aforementioned incident;

(7) That in the alternative, if Petitioner is adjudged liable, that such liability be limited to the Petitioner's interest in the value of **Barge YD 71** at the time of the incident and that Petitioner be discharged therefrom upon the surrender of such interest, and that the money surrendered, paid, or secured as aforesaid to be divided pro-rata according to the above-mentioned statutes among such claimant(s) as may duly prove their claim saving to all parties any priorities to which they may be legally entitled, and that a decree may be entered discharging Petitioner from all further liability; and

(8) That this Court grant such other and further relief as the Court deems just and proper, together with interest, attorneys' fees, costs and disbursements in connection with this matter.

Dated: Roanoke, Virginia
       May 4, 2020

                    LEWIS BRISBOIS BISGAARD & SMITH, LLP

By: John T. Jessee, Esq. (VSB#18745)
*Attorneys for Petitioners*
SOGGY BOTTOM CORPORATION and COASTAL DESIGN & CONSTRUCTION, INC.
310 First Street, Suite 405
Roanoke, Virginia 24011
Tel. No.: (540) 283-0129
Fax No.: (540) 283-0044
Email: john.jessee@lewisbrisbois.com

By: James H. Rodgers, Esq. (JR-4798)
77 Water Street, Suite 2100
New York, NY 10005
Tel. No.: (646) 666-7701
Fax No.: (212) 232-1399
Email: james.rodgers@lewisbrisbois.com